## LIABILITY OF VILLAGE FOR CONTAMINATION OF A WELL.

Common Pleas Court of Franklin County.

ELLEN WAUGH v. THE VILLAGE OF MARBLE CLIFF.

Decided, May 26, 1916.

*Sewage Disposal Plants—Construction of, Undertaken by Municipalities in Their Governmental Capacity—Mistake in Design Distinguished from Negligence in Construction or Operation—Actions Based on Property Rights Distinguished from those for Personal Injuries—Right of Action Based on Nuisance Lies in Tenant as Well as the Landlord.*

A municipal corporation in the construction and maintenance of a sewage disposal plant acts in a purely governmental and not in a private or proprietary capacity; and it follows that no cause of action is stated for a purely personal injury against a municipality by the allegation that the basin of a sewage disposal plant was so negligently constructed that the contents leaked therefrom and, percolating through the earth, contaminated the well from which plaintiff obtained her water, causing her to be stricken with typhoid fever.

*H. S. Kerr* and *Eugene Morgan,* for plaintiff.
*Bennett & Westfall,* contra.

BIGGER, J.

Heard on motion of defendant's counsel for non-suit on plaintiff's statement of the case.

Plaintiff in this case brings her action to recover for personal injuries alleged to have been sustained by her by reason of the construction and maintenance in a negligent manner of a sewage disposal plant, the specific charge being, and the only averment of negligence being that a basin, in which sewage was conducted from the sewage system of the village, had been so negligently constructed that it leaked the sewage, which percolated through the soil and entered her well from which drinking water was

obtained for the family, and that by reason of this contamination of the water she contracted typhoid fever, and from which she suffered for a long period of time, and she seeks to hold the village of Marble Cliff liable in damages for this alleged personal injury.

The contention of the defendant, the village of Marble Cliff, is that it is not liable for such injury under the law, and therefore the action should be dismissed.

The question arises upon the statement of the case to the jury.

Plaintiff's counsel, during the progress of the statement, desired to make some statements which were beyond the averments of the petition as to the negligence claimed; objection was made, and upon the ruling of the court that counsel would be confined to the acts of negligence charged in the petition, counsel asked leave during the progress of his argument to amend so as to include averments with reference to negligent maintenance of that which was alleged only to have been negligently created, which was allowed. And thereupon, upon the statement and the pleading, counsel moves the court to arrest the case.

Now that raises the question as to whether or not in the construction and maintenance of sewage purification systems, municipal corporations are liable for personal injuries sustained from their negligent construction and maintenance of the same.

The question is, of course, one of considerable public interest; one which interests not only this village, but many of the municipalities of the state, and, so far as I know, has not heretofore been brought under judicial scrutiny in Ohio.

In the first place, I observe that this is not an action to recover for injury or damage to property rights by the creation and maintenance of a nuisance. Doubtless by virtue of the provisions of the Federal Constitution which provides that no state may enact laws which shall deprive a citizen of life, liberty, or property without due process of law, for injuries to property, without regard to the capacity in which the state or municipality may act, if there be a substantial taking of property, a liability exists. But now this is an action purely for personal injury.

Unquestionably, under the decisions in this state and elsewhere, if a property owner brings an action alleging injuries from the creation of a nuisance by a municipality, he may recover not only for the extent of damage growing out of his right to the peaceable and comfortable enjoyment of his property, but he may recover damages incidentally caused by illness to himself and his family. But after all, that is only recovery for injury to property, because the right to property carries with it the right to its comfortable enjoyment, and when that is interfered with and the man's comfortable enjoyment is invaded, it is a taking of property. And if it deprives him of the peaceable and comfortable enjoyment of his property, both himself and his family, to which he is entitled as an incident to his property right, he may recover for that. That question has been decided more than once in Ohio.

In the case of *Belloit* v. *Mansfield* that question was decided, and undoubtedly it is the law. But it is to be noticed that while it may be in the right of the husband, yet when the wife sues purely for a personal injury, we are confronted then with the question as to whether or not a municipal corporation in the erection and maintenance of a sewage purification plant, is liable in damages. And that turns upon the question as to whether or not the municipal corporation in the construction and maintenance of such plants, acts in a purely governmental capacity, or acts in its private and proprietary capacity.

Now I note that much of the argument made by plaintiff's counsel here seems to proceed, as I gather their argument, upon the principle that the complaint made here is one of defect in plan, or fault in plan; and the great weight of authority is that for mistakes of judgment in the plan upon the part of municipal officers in the construction of public works, municipalities are not liable; and that principle is founded upon the legal doctrine that where the officers of a municipality act in a *quasi*-judicial capacity, or in a legislative capacity, that the municipality is not liable for errors or mistakes of judgment. That, I assume, to be true generally, whether the municipality is acting in a governmental capacity or in a private and proprietary capacity;

that for mere errors of judgment liability can not be asserted, but for negligence in carrying out the plans after they are adopted, a municipality is liable when it is acting in a proprietary or private capacity. And I believe the averments of this petition are sufficient to charge negligence in the carrying out of the plans, that is, in the doing of the thing agreed or determined to be done, and not a mere averment that there was negligence in the plans.

For instance, to illustrate the difference, and assuming now that this was a proprietary act upon the part of the municipality, if this basin had been constructed of insufficient capacity so that the water flowed over the top of it, which might be simply be an error of judgment in the construction, there would be no liability; whereas, if it were so negligently constructed as to leak out the sewage, there might be and probably would be, assuming now this was the act of a municipality in a proprietary capacity. But when a municipality acts in a purely governmental capacity in carrying out the orders of the sovereign power—the orders of the state, and acts in a purely governmental capacity—there is no liability either for construction or maintenance, as the court understands the law. That grows out of the principle that the state not being liable to a suit in damages for any negligent or tortious conduct on the part of its officers and agents, that immunity is extended to the municipality when it acts in a purely governmental capacity.

So that presents this question, as I view it, in this case, as to whether or not a municipal corporation under the law of Ohio, when it constructs a purification system, acts in a governmental capacity or in a proprietary capacity.

I do not think it is necessary to go beyond the decisions in Ohio to find a statement of the rule and to reach a correct conclusion upon that proposition.

The first decision in Ohio in which that question was brought under consideration by the Supreme Court of the state is one reported in the 4th Ohio State, in which Judge Ranney renders the opinion, and it is discussed in the usual able and comprehensive manner which distinguished that jurist in all of his judicial

work. I refer to the case, *City of Dayton* v. *Pease*. I have not the time to read at length. I read from the syllabus first:

"Municipal corporations are liable for injuries to third persons, resulting from the negligence of subordinate officers or agents acting under their authority and direction, in the construction of public improvements belonging to such corporations.

"In such cases, the maxim, *respondeat superior*, properly applies, in the same manner and to the same extent, as in its application to the liabilities of private individuals.

"But where such agent or officer, although appointed by the corporation, performs duties for or between individuals, in which the corporation has no interest, no such liability arises, and the officer alone is responsible."

Now the court, you will observe, does not decide the particular point, because, in the view of the court in the case there presented, the municipality was acting in its proprietary capacity. But Judge Ranney discusses that subject, and, I think, states the rule probably as clearly as you will find it stated anywhere as to the line of demarcation. And after discussing a number of cases in which the courts had laid down the rule that for mere errors of judgment upon the part of boards and officers of municipalities in plans of public works there was no liability, and after citing a number of such cases, the judge proceeds to say this:

"In the exercise of the first class, the corporation can not be made responsible for the misconduct of those intrusted with their execution. It embraces all that description of duties, involving judgment and discretion in their exercise, and resulting in prescribing the rules by which the conduct of individuals is to be regulated, or works, either public or municipal, are to be accomplished. And the immunity from responsibility to individuals is grounded upon the same public policy that protects the judge or legislator in the exercise of his duties, and is designed to remove every obstruction to the free exercise of his judgment and discretion."

Now I call special attention to what he says here:

"It also includes, so far as the liability of the corporation is concerned, the accomplishment of purposes merely public, devolved upon the corporation as a public officer, or agent of the state, with no power to decline their performance."

Now that is a fair and comprehensive statement, as I conceive it, of the rule.

The judge proceeds further:

"But when a municipal corporation undertakes to execute its own prescribed regulations, by constructing improvements for the especial interest or advantage of its own inhabitants, the authorities are all agreed that it is to be treated merely as a legal individual, and as such owing all the duties to private persons, and subject to all the liabilities that pertain to private corporations or individual citizens."

And he mentions acts of construction and the repair of streets.

Now I think, as I say, that that is a very fair statement of the rule which distinguishes between the liability of municipal corporations for those acts which are proprietary, those public improvements which are undertaken primarily for the benefit of the inhabitants of the municipality, and governmental acts. Benefit and liability work hand in hand. If public improvements are constructed for the benefit of the inhabitants of a municipality, they should be liable for injuries occasioned to the individuals by negligence in their construction. In other words, the same rule should be applied to a municipality when it acts for its own benefit as is applied to an individual. The fundamental principle that a man must use his own so that he shall not injure his neighbor is to be applied as well to municipalities as to private individuals when they are acting in the same way. The laws of the state furnish protection to the individual; they guard his property rights, and he must so use it that he will not do injury to his neighbor. In the exercise of the police power, which is inherent in the state, it may enact police regulations which may require individuals of the state to undertake such public improvements for the benefit of the citizens of the state at large. Some times they are mandatory; not ordinarily, as

improvements go, but those which involve the public health, I may say. The state does not undertake in the exercise of police power to regulate subdivisions of the state and require them by mandatory act to do something for the public except that which touches the public health. Health boards of municipal corporations, when they act so as to cause personal injury, do not render the municipal corporation liable in an action for damages; and that is purely upon the principle that in such undertakings as are engaged in here by health boards, the municipal corporation is acting purely as the agent of the state for the benefit of the public at large and not in its proprietary capacity.

You will find, now, when it comes to the preservation of the public peace and the preservation of property, that ordinarily such acts are permissive, but even in those cases—say, for instance, the creation of a fire department where the municipalities are authorized to establish a fire department and they voluntarily act by the creation of a fire department—the courts have always held that no liability can be asserted against the municipality for negligence. That question arose, as counsel doubtless know, in our country, where the question arose specifically as to whether or not the municipality was liable for the negligent conduct of its fire department when giving an exhibition, and a tower killed a man, and it was shown that there was clearly negligence and that the municipal authorities knew that that tower was not properly safeguarded. But the city escaped liability purely upon the ground that in the creation and maintenance of a fire department it acted as a public agent of the state, and the state enjoying immunity from prosecution for such negligence, that immunity was enjoyed by the municipality. That principle has always been applied to fire departments; it has also been applied to the acts of police departments; we are all familiar with that. No liability can be asserted against the municipality for tortious conduct of a police officer; the only liability that can be asserted is against the officer and his bondsman. The same is true with reference to workhouses and institutions of that sort, which a municipality undertakes to carry out under an enabling act of the state.

It was so held in the erection and maintenance of a work-house if there be negligence. For instance, it has been decided if it be erected and maintained in such a way as to be unhealthy and in reality a nuisance, and the health of prisoners is injured or otherwise, by reason of that, no liability can be asserted.

It has also been held that for personal injuries sustained through the negligence of statutory officers of such institutions, municipal corporations are not liable.

That all proceeds simply upon this principle, that the municipality in doing that thing was acting simply under the state and in its stead, and while not for the benefit of the inhabitants of the municipality primarily, yet it was for the benefit of the public. And I am free to say that if the question were a new one, a question which was not put beyond all cavil by a long list of decisions, that it seems to me there is more reason for holding a municipality liable for the negligence of its employees in the fire department, than for the negligence of those who are connected with such a work as sewage purification, and for this reason: the creation and maintenance of a fire department benefits practically no one except the citizens in the municipality. Indeed, it is not very easy to distinguish between the liability of a municipality for negligence of its fire department and negligence of other subordinates—agents of the municipality—when they are acting for the benefit of the people of a municipal corporation. But that question is now put beyond question, of course, by the long list of decisions.

Of course, the same principle is applied with reference to police departments. A municipal corporation acts simply as an agent of the state in the preservation of the public peace, and there is no liability on the part of the municipality for failure to properly preserve the peace and protect the lives and property of the inhabitants of a city.

Now the question is, is this an act undertaken by the corporation purely in a governmental capacity or in a proprietary and private capacity, and, as Judge Ranney says, "for the benefit of the inhabitants of the municipality?"

Now the statute of this state—you will observe, gentlemen, Section 3872, if I have noted it correctly—contains this provision, and it has always been the law of Ohio, "that municipal corporations may empty their sewage into a river or other suitable place." I am not able to state when that act was first passed in Ohio, but it has been a law, and is the law now, that a municipal corporation may empty its sewage into a river—terminate its sewers in a river or other suitable place.

Now it is true liabilities have been asserted against a municipality for creating a nuisance in a river; but so long as the sewage is not of sufficient quantity to create a nuisance upon the stream below, unquestionably a municipal corporation acts within its rights when it terminates its sewers in a river. But as the population of the state increased, while that act still stands upon the statute books, the state has found it necessary, in the interest of the public health, to require by mandatory act that when the board of public health determines it is necessary municipalities shall, under the orders of the board of health and in conformity with their plans, put in such purification plants.

Now I have no doubt that it would subserve all the interests of the inhabitants of Marble Cliff to terminate these sewers in the Scioto river. It is not apparent to the court how any particular private advantage is derived by the inhabitants of Marble Cliff from the establishment and maintenance of a purification plant for its sewage so that the affluent from it may enter the river in a pure condition. But, of course, it is apparent why that was enacted. It was enacted for the benefit, primarily, of others than the inhabitants of the village of Marble Cliff. It was enacted, as is apparent at a glance, for the benefit of the health of the community at large, and especially for those who live farther down upon the stream.

Now that is a duty imposed upon the municipality, not in the interest, particularly, of the inhabitants, because all of their purposes and ends would have been subserved simply by emptying the sewer, as the statute provides, into the river; but the public health requires now that a municipal corporation shall

establish and maintain a purification plant, and in doing so, in my judgment, it acts purely as a governmental agency, and that the same immunity which is enjoyed by a municipality in the maintenance and conduct of its fire department and its police department and in the conduct of a workhouse and other similar institutions is enjoyed here. The application of the principle can not be distinguished between the creation and maintenance of a fire department or police department and the maintenance of such an institution as this. Indeed, I think you will find generally that ordinarily the acts of municipal corporations organized under mandatory direction of the state, or under permissive authority conferred by its charter upon the municipal corporation which are undertaken for the health of the community, are undertaken in a governmental capacity and not in a proprietary capacity. So that this duty being imposed now upon the municipality and the inhabitants of the municipality being taxed simply to create this for the benefit of the public, and not for the benefit of the inhabitants of the municipality— applying the language of Judge Ranney that when it is not undertaken by the municipality for the benefit of the people of the municipality, but, as he says, is commanded by the state and without authority to refuse to carry it out—because in this case the municipality could not refuse on the order of the health board, that no liability can be asserted for a purely personal injury.

Now I come back again to where I started, by saying that we are not confronted with the question of injury to property. That presents another question.

I do not think I would quite agree with defendant's counsel in the claim that one must be the absolute owner in fee in order to entitle him to assert a claim for damages to his property interests. I think a tenant may also assert the same right. Indeed, I think an action by both landlord and tenant may lie for injury to the property; if, upon the one hand, a nuisance creates a permanent injury to realty, by the landlord; if it disturbs the temporary possession of the tenant, then by the tenant; and I believe either of them may maintain that right, because it is none the less a

property right because one is merely a tenant under lease. But that is not the question here presented. This is a question purely for personal injury, and I have reached the conclusion that the municipality is not liable. It is an important question, and one that has not arisen yet in the state, but one which doubtless will arise, as these plants are being created pretty rapidly under the orders of the health board, and I have therefore taken rather more than ordinary time to investigate the question.

I want to say that McQuillin, one of the latest writers on municipal law, you will find discusses this in a very full and comprehensive manner—Section 2622 in Volume 6 of McQuillin on Municipal Corporations, and especially at 2623. I read just briefly what McQuillin says here at 2623 with reference to governmental duties, when imposed upon municipal corporations:

"In the absence of statute, it has always been the law that no private action for tort will lie against the state, since negligence can not be imputed to the sovereign. So, in the various localities or local areas where the state agencies merely perform the governmental functions of the state, and acquire no individual corporate existence, they stand as the state, and, therefore, to hold them responsible for negligence would be the same as holding the sovereign power answerable for its action. It is assumed that no private legal duty rests upon a city to perform governmental functions, and, moreover, 'their character precludes the idea of the common law rule of responsibility, for there is no standard of reasonable care by which the acts of the government may be tested. The state, through its representatives, namely, the municipal corporations, acts in its sovereign capacity, and does not submit its actions to the judgment of the courts.' 'The reason is that it is inconsistent with the nature of their powers that they should be compelled to respond to individuals in damages for the manner of their exercise. They are conferred for public purposes, to be exercised in their prescribed limits, at discretion, for the public good; and there can be no appeal from the judgment of the proper municipal authorities to the judgment of courts and juries.' But where a state agency becomes a corporation 'it thereby acquires an identity distinct from its sovereign power, and the principle stated does not prevent the incorporated body from being held liable for its own negligence.'

*"The rule is firmly established* in our law that where the municipal corporation is performing a duty imposed on it as the agent in the exercise of strictly governmental functions, there is no liability to private action on account of injuries resulting from the wrongful acts or negligence of its officers or agents thereunder, unless made liable by the statute. In other words, unless a right of action is given by statute, municipal corporations may not be held civilly liable to individuals for 'neglect to perform or negligence in performing' duties which are governmental in their nature, and including generally all duties existent or imposed upon them by law solely for the public benefit. Such liability, may, however, *be imposed by statute or charter."*

And much to the same effect. So that I have concluded that the petition in this case states no cause of action; at least upon the statement made here no cause of action exists. The court takes notice, of course, of the laws of the state, and that such undertakings are for the benefit of the public and not of a municipal corporation.

And again at Section 2698, McQuillin:

"The damages for which a municipal corporation is liable due to its neglect to observe sanitary precautions in the care and maintenance of its sewers are those arising from injuries to property, and do not, it is generally held, extend to death, sickness and physical discomfort caused by such neglect. Thus, where sickness or death is caused, independent of any injury to property rights, by the pollution of a stream by sewage, the municipality is generally held not liable, on the theory that the establishment of a public sewer system is an exercise of a governmental function; although the contrary has been held in New Hampshire and Vermont. And it is held in several jurisdictions, that where there is an injury to property rights and also to health, damages for the latter may be included."